FILED '10 JUL 27 11:33 USDC-ORE

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

EUGENE DIVISION

UMPQUA WATERSHEDS, et. al.,                                    09-6338-TC

Plaintiffs,

v.                                                            OPINION AND ORDER

UNITED STATES FOREST SERVICE,

Defendant.

COFFIN, Magistrate Judge:

In April 2009, the United States Forest Service ("Forest Service") decided to implement the

Riley Ranch Access project ("Riley Ranch project"), which authorizes construction of a 0.9 mile long

and 12 to 14 foot wide trail across Forest Service Land in the Oregon Dunes National Recreation

Area ("Oregon Dunes" or "Dunes"). The proposed trail will be open to off-highway vehicle

("OHV"), equestrian, and hiking and will connect the County's Riley Ranch park with the County's

isolated 80-acre land parcel, which is surrounded by the Oregon Dunes' open OHV riding area.

Umpqua Watersheds, Cascadia Wildlands, Wildlands CPR, Oregon Wild, and Center for Biological

Diversity ("Environmental Groups") bring this action under the Administrative Procedures Act

Page 1 - OPINION AND ORDER

(APA), 5 U.S.C. §§ 101-9801, to challenge the Forest Service's decision. The Environmental

Groups allege that the Forest Service's decision violated the National Environmental Policy Act, 42

U.S.C. §§ 4321-4370, and the National Forest Management Act, 16 U.S.C. § 1600 et seq.

The parties have filed cross motions for summary judgment under Fed. R. Civ. P. 56. The

parties have consented to allow a Magistrate Judge to decide this case in accordance with Fed. R.

Civ. P. 73 and 28 U.S.C. § 636(c). I heard oral argument on this matter on July 9, 2010. For the

reasons set forth below, I deny plaintiff Environmental Groups' motion and grant defendant Forest

Service's Motion.

## **Background**

In March 1972, Congress carved out a 31,500[1] acre area of the Siuslaw National Forest,

creating the Oregon Dunes National Recreation Area. AR 4874. The Oregon Dunes consists of a

long, narrow strip of land along the Oregon coastline, approximately 40 miles long and 1.5 miles

wide between Coos Bay-North Bend to the south and Florence to the north. AR 4877. Congress

designated this area to "provide for the public outdoor recreation use and enjoyment of certain ocean

shorelines and dunes, forested areas, freshwater lakes, and recreational facilities in the State of

Oregon...and the conservation of scenic, scientific, historic and other values contributing to the

public enjoyment of such lands and waters...." AR 377. "The Oregon Dunes NRA is the most

extensive and unique expanse of sand dunes along the Pacific Coast in all of North America." Id.

Although it is comprised mostly of sand dunes, the Oregon Dunes also contains: extensive wetland

---

[1]The Administrative Record contains different statements of the acres contained in the
Oregon Dunes: 31,000 acres (AR 4877), 32,150 acres (AR 11), and 31,500 acres (AR 4874).
However, the total acres contained in the Oregon Dunes is of little consequence, and for clarity's
sake I will use 31,500 acres, the area set forth in the Oregon Dunes Management Plan. AR 4874.

Page 2 - OPINION AND ORDER

areas; upland coniferous forest; several unique geological features, including tree islands, huge parabola dunes, oblique dunes; and a wide variety of unusual and limited wildlife habitats such as critical habitat for the snowy plover, a threatened shorebird. Id. The Forest Service manages most of the Oregon Dunes–28,900 of the Oregon Dunes 31,500 acre area.

As required by the Act creating the Oregon Dunes, the Forest Service conducted a wilderness suitability report for the area in 1972. AR 7. The report noted that "man's works are substantially noticeable throughout [the Dunes]," and the "sights and sounds of civilization are readily apparent...." AR 24, 26. Two paved roads leading to the beach at the Oregon Dunes bring several hundred thousand visitors annually. AR 24. The most popular activities for visitors are: "beachcombing, wildlife viewing, jetty fishing, and dune buggying." Id. Invasive plants, such as Scotch broom, shorepine, and European grass, which were planted to control the movement of sand, were present. AR 25. Heavy, motorized equipment is used in the Dunes to maintain a dam and a Coast Guard telephone line. Id. The report noted modifications of the area to "accommodate economic livelihoods nearby." Id. The Report determined that "no portion of the lands within the Oregon Dunes meets the requirement for wilderness as stated in The Wilderness Act, P.L. 88-577;" thus, the Forest Service recommended that no lands within the Oregon Dunes be designated as wilderness. AR 8.

In 1994, the Forest Service published a Management Plan for the Oregon Dunes National Recreation Area ("Dunes Plan") AR 4868-5040. Because the Dunes Plan was a major federal action significantly affecting the quality of the human environment, a detailed EIS was prepared under the National Environmental Policy Act. AR 4293-867. The Dunes Plan guides all resource management in the Oregon Dunes and categorized the recreation setting for the entire area as Semi-Primitive

Page 3 - OPINION AND ORDER

Motorized. AR 4869, 4874 9919, 4897. It established 12 different management areas ("MAs") in the Oregon Dunes. AR 4912-4919. The MAs are numbered MA 10(A) through MA 10(L). The MA 10(B) area is "OHV Open" and provides OHV riding in undeveloped, unvegetated settings. AR 4344. The MA 10(C) area is "OHV Restricted to Designated Routes," meaning that OHV's may be operated only on designated routes. AR 4928. The Goal of MA 10(C) is to "protect existing vegetated areas while providing controlled opportunities for ORV riding and travel on designated routes...to reach the beach and other [ORV riding areas]." Id. The MA 10(F) area, which is adjacent to MA (10)(C) is designated "Plant, Fish and Wildlife Habitats." AR 4934. The goal of this area is "[t]o maintain, create, enhance or restore a variety of special plant, fish and wildlife habitats." Id. The Dunes Plan recognized that MA 10(F) contains "globally significant plan communities" which are relatively undisturbed. Id.

The Dunes Plan states that the Forest Service should "[i]dentify designated routes [in the MA 10(C) area] within 3 years of Dunes Plan approval." AR 4928. The Dunes Plan activity schedule, however, noted that planned projects, such as ORV routes, may be revised if management direction or priorities change. AR 5028. Such revisions do not require amending the Dunes Plan. Id. The Dunes Plan was approved in 1994. Until the Riley Ranch Project decision, the Forest Service had not designated or closed any OHV routes in the MA 10(C) area. AR 9759.

The Forest Service obtained the western portion of the Riley Ranch property in 1985 through condemnation. AR 7306, 422-24. The Forest Service's title is subject to Coos County's right to a 60-foot wide right-of-way through the premises. AR 423. In 2001, Coos County purchased the remaining 137 acres of the Riley Ranch property. AR 7306. The Riley Ranch property purchased by the County lies directly east of the Forest Service's Riley Ranch Property. AR 9919. The County

Page 4 - OPINION AND ORDER

has built a campground with facilities for OHV riders on its Riley Ranch property. Id. Coos County also owns an isolated 80-acre parcel of land to the west of the Forest Service's parcel. AR 7308. The County's 80-acre parcel is surrounded by National Forest System land, most of which is open to OHV riding. AR 9918. The easiest way for OHV users camping at the County's Riley Ranch campground to reach the County's 80-acre parcel and surrounding dunes open to OHV riding is through the MA 10(C) area.[2] AR 9919-20. Starting in 2004, the Forest Service began analyzing alternatives to allow the County to use its right of way and to allow OHV riders access from the County's campground to its 80-acre parcel and surrounding open sand dunes. AR 6413-15, 7306. Two years later, the Forest Service and the County entered into a cost-sharing agreement which provided in relevant part that the County would pay for the environmental analysis required to access the impacts of providing access from the County's campground to its 80-acre parcel and adjacent open dunes. AR 7306-07.

About a year later, in 2007, the Forest Service issued an initial scoping notice describing proposed trails on the Oregon Dunes–one motorized (and the subject of this litigation) and one non-motorized. AR 7019-7021.[3] In 2008, the Forest Service issued a new scoping letter and allowed public comment until December 2008. AR 9208-9213, 9922. Based in part on the public comments

---

[2] I note that plaintiff Environmental Groups argue that there are alternative routes from the campground to the 80-acre parcel. (Plfs.' Opening Memorandum at 5, n. 3 (dkt. #15)).

[3] In a footnote in their Opening Memorandum, plaintiff Environmental Groups note that their groups and the general public were not informed of a geotechnical analysis and soils analysis the Forest Service conducted and that the Forest Service used a categorical exclusion to document the environmental effects of this analysis, which apparently involved the use of some heavy machinery. (Plfs.' Opening Memorandum at 6, n. 4 (dkt. #15)). However, as the Forest Service points out in its Memorandum, the Environmental Groups must bring a separate action if they wish to challenge the Forest Service's decision to use a categorical exclusion in the 2007 analysis.

Page 5 - OPINION AND ORDER

the Forest Service decided to again re-scope the project. In February 2009, the Forest Service issued a revised preliminary environmental analysis and accepted public comments through March 20, 2009. AR 9521-9646, 9922.

In April 2009, the Forest Service issued a 63-page Environmental Assessment ("EA"). AR 9912-10047. The EA considered why the Riley Ranch Project constructing a designated access route was needed, and identified, among other things, that the project was needed to protect Butterfield lake's aquatic species and water quality and to close user-created trials in the MA 10(C) area. AR 9919-20. The EA considered two alternatives in detail. AR 9925. Alternative 1 was "no-action," which would have, among other things, allowed the continued use of the user-created trails through MA 10(C). AR 9925-26, see also, AR 9759 (record of conversation explaining that without "special order designating the trails [in MA 10(C)] no enforceable action [to prevent OHV riding on user created trails] could be taken) . Alternative 2 was to designate an OHV-Equestrian Trail, which would construct one designated trail across the MA 10(C) area and would restrict OHV use to the designated trail. AR 9926. As part of the trail designation contemplated by Alternative 2, barriers would be used to block off user-created trails and to protect key areas, such as Butterfield lake. Id. The EA's discussion of Alternative 2 contained specific design criteria that required a formal agreement with the County to define the County's obligation to implement required mitigation and long-term maintenance requirements to ensure that OHV riders do not damage National Forest System lands. AR 9983. The EA projected that Alternative 2 will ultimately "reduce damage to vegetation from user-created trails, compared to the existing condition." AR 9933.

Also in April 2009, the Forest Service issued a Decision Notice/Finding of No Significant Impact ("Decision"), which decided to "implement all actions described for Alternative 2 of the

Page 6 - OPINION AND ORDER

Project EA." AR 10050. Thus, the Decision authorized construction of a 14 foot wide east-west motorized and non-motorized trail[4] open to OHV, equestrian, hiking, and administrative use to connect the County's Riley Ranch campground with the County's 80-acre parcel and adjacent open OHV riding areas in the Oregon Dunes. AR 10048-61,9918, 9926. The Decision amends the Siuslaw Forest Plan by designating the Riley Ranch trail as the only authorized OHV route in the MA 10(C) management area. AR 9920-21.

## Legal Standards

Courts review agency decisions that allegedly violate The National Environmental Policy Act and the National Forest Management Act under the Administrative Procedure Act. 5 U.S.C. § 702; Or. Natural Res. Council Fund v. Goodman, 505 F.3d 884, 888-89 (9th Cir. 2007) (citations, internal quotation marks omitted). An agency decision may be set aside only if it is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). Although

---

[4]In their opening memorandum, plaintiff Environmental Groups note that the Riley Ranch Project is in an inventoried roadless area, meaning road construction is generally prohibited. (Plfs.' Opening Memorandum at 10 (dkt. #15)). Plaintiffs also note that the Forest Service characterized the access route as a "road" until the public informed the agency that constructing a road through an Inventoried Roadless Area was unlawful; then, the Forest Service began calling the access route a "trail." Plfs.' Opening Memorandum at 5 n. 5 (dkt. #15). However, the Environmental Groups neither challenge the Forest Service's designation of the access route as a "trail" rather than a "road" in this action nor claim that the access route cannot lawfully be designated a trail. I observe, however, as a matter of interest that the Forest Service's definition of "trail"–"a route 50 inches or less in width or a route over 50 inches wide that is identified and managed as a trail," 36 C.F.R. § 212.1 (emphasis supplied), is reminiscent of the words of Humpty Dumpty in Lewis Carroll's classic Alice's Adventures in Wonderland and Through the Looking Glass: "'When I use a word,'" Humpty Dumpty said, in rather a scornful tone, "'it means just what I choose it to mean-- nothing more nor less.'" LEWIS CARROLL, ALICE'S ADVENTURES IN WONDERLAND AND THROUGH THE LOOKING GLASS 188 (Penguin Books). At oral argument, the government suggested that a "trail" invoked recreational use, while a "road" implicated the purpose of transport. Perhaps the regulation should be clarified to list the criteria that determine when a 14 foot-wide route becomes a "trail" as opposed to a "road."

Page 7 - OPINION AND ORDER

review under this standard is deferential, "the agency must nonetheless articulate a rational connection between the facts found and the conclusions made. If an agency fails to consider an important aspect of a problem...or offers an explanation for the decision that is contrary to the evidence, its action is arbitrary and capricious." Goodman, 505 F.3d at 888-89.

In a cases brought under the APA seeking review of an agency's decision, "summary judgment is an appropriate mechanism for deciding the legal question of whether the agency could have reasonably found as it did." Occidental Eng'g Co. v. INS, 753 F.2d 766, 769 (9th Cir. 1985). The court's function is to review the decision of an administrative agency which is itself the fact finder. Id. The court's function is limited to determining whether the evidence in the record "permitted the agency to make the decision that it did." Id.

## Discussion

The Environmental Groups argue that the Forest Service's decision violated the National Environmental Policy Act by: (1) failing to disclose and analyze the cumulative impacts of the Riley Ranch project; (2) basing a Finding of No Significant Impact on mitigation measures which are not certain to occur and will not completely compensate adverse environmental impacts; and (3) by failing to publish an Environmental Impact Statement for the Riley Ranch project. Additionally, the Environmental Groups contend that the Forest Service's decision violated the National Forest Management Act by approving a site-specific project that is inconsistent with the Dunes Plan and by authorizing a significant plan amendment without following proper procedures.

## A.    The National Environmental Policy Act ("NEPA") Claims

The NEPA "is our basic national charter for protection of the environment." Klamath-Siskiyou Wildlands Ctr. V. Bureau of Land Mgmt., 387 F.3d 989, 993 (9th Cir. 2004) (quoting 40

Page 8 - OPINION AND ORDER

C.F.R. § 1500.1(a)). It requires that federal agencies assess the impact of proposed actions that significantly affect the quality of the human environment. 42 U.S.C. § 4332(2)(C). The NEPA has dual purposes: "ensur[ing] that the agency, in reaching its decision, will have available, and will carefully consider, detailed information concerning significant environmental impacts;" and "guarantee[ing] that the relevant information will be made available to the large audience that may also play a role in both the decisionmaking process and the implementation of that decision." Robertson v. Methow Valley Citizens Council, 490 U.S. 332, 350 (1989). The NEPA does not contain substantive environmental standards; instead, it outlines "'action forcing' procedures that require agencies to take a 'hard look' at environmental consequences." Kern v. Bureau of Land Mgmt., 284 F.3d 1062, 1066 (9th Cir. 2002). If a federal agency determines that a proposed action will significantly affect "the quality of the human environment," the NEPA generally requires that the agency prepare an Environmental Impact Statement ("EIS"). 42 U.S.C. § 4332 (C). Where a proposed action does not significantly affect the environment, the NEPA does not require an EIS. Id.; see also, Oregon Natural Desert Ass'n., 531 F.3d at 1120 ("NEPA's purpose is not to generate paperwork-even excellent paperwork-but to foster excellent action.")

The Council of Environmental Quality ("CEQ"), which was established by the NEPA, promulgates regulations to guide federal agencies in complying with the NEPA; specifically in determining what actions are subject to the statutory requirement to prepare an EIS. 40 C.F.R. § 1500.3. The CEQ regulations allow an agency to prepare a more limited document, an Environmental Assessment ("EA"), when a proposed action will not significantly affect the human environment. Id. §§ 1501.4(a)-(b). An EA is to be a "concise public document" that "[b]riefly provide[s] sufficient evidence and analysis for determining whether to prepare an [EIS]." Id. §

1508.9(a). CEQ regulations require an agency preparing an EA to consider "[u]nique characteristics of the geographic area such as proximity to historic or cultural resources." Id. § 1508.27(b)(3). If an agency determines that an EIS is not required under applicable CEQ regulations after preparing an EA, then the agency must issue a "finding of no significant impact" (FONSI), which briefly states the reasons why the proposed agency action will not have a significant impact on the human environment. Id. §§ 1501.4(e), 1508.13. See generally Dep't of Transp. v. Pub. Citizen, 541 U.S. 752, 756-58 (2004).

## 1.    Cumulative Impacts

Plaintiff Environmental Groups argue that the Forest Service violated the NEPA by not considering the cumulative impacts of the Riley Ranch Project. Specifically, plaintiffs argue that the Forest Service "impermissibly limited the geographic scope of the cumulative effects analysis area" to the Forest Service land through which the proposed trail will pass; thus masking the increased risk of OHV trespass and the effects of such trespass on protected areas. The Forest Service counters that the NEPA requires only that an EA contain a brief discussion of environmental impacts, but even so, it properly analyzed the Riley Ranch project's impact on the 2,900 acres that comprise the Oregon Dunes' southern riding area.

The NEPA regulations require that an EA contain a "brief discussion of environmental effects," 40 C.F.R. § 1508.9(b), but "do not specifically mention a cumulative impact analysis." Kern, 284 F.3d at 1076. An EA "must in some circumstances include an analysis of the cumulative impacts of a project.... An EA may be deficient if it fails to include a cumulative impact analysis ...." Native Ecosystems Council v. Dombeck, 304 F.3d 886, 895 (9th Cir.2002); see also Klamath-Siskiyou Wildlands Ctr. v. Bureau of Land Mgmt., 387 F.3d 989, 993-94 (9th Cir.2004);

Kern, 284 F.3d at 1076-78 (9th Cir.2002). Without some quantified or detailed information in the EA, "neither the courts nor the public...can be assured that the [agency] provided the hard look that it is required to provide." Neighbors of Cuddy Mountain v. U.S. Forest Service, 137 F.3d 1372, 1379 (9th Cir. 1998).

Here, the EA included quantified and detailed information. It acknowledged that the Riley Ranch project would diminish the recreational experience for Dunes visitors who enjoy few encounters with other OHV users because the project may increase OHV use in the southern Dunes. AR 9960. The EA discussed the possibly that riding at the Oregon Dunes could reach a capacity point and discussed management tools potentially needed to keep OHV riders within the available capacity, which was set forth in the Dunes Plan. AR 4512-13. The EA ultimately concluded that the project—even taking into account possible expansion of the County's Riley Ranch park, would not result in OHV use of the Southern Dunes exceeding the capacity. AR 9937-38, 9960. The EA considered past and present actions in the trail area—including that the user-created trails in the Riley Ranch planning area were possibly damaging resources. The EA concluded that the Riley Ranch project would address that issue by formally closing all OHV routes in MA 10(C) except for the designated trail. AR 9959. Indeed, the Riley Ranch project EA noted that not undertaking the project and designating a trail would likely continue adverse impacts on wildlife and habitats within the project area. AR 9942. The record further establishes that the EA considered the Riley Ranch project's effects on threatened or endangered species. AR 9945-47. For example, the Forest Service observed that "no known or predicted nests exist on the Siuslaw National Forest within over 15 miles of the planning area." AR 9945. The Forest Service also noted that designated snowy plover areas at the Oregon Dunes are closed to OHV use and are several miles from the proposed trail. AR 9946.

Page 11 - OPINION AND ORDER

Based on the underlying record, I find that the Forest Service's analysis of the cumulative impacts of the Riley Ranch project was sufficient and demonstrates that the Agency took a "hard look" at the project as required by NEPA. As noted above, the Forest Service did not limit its cumulative impact analysis to federal lands. Instead, among other things, the EA took into account the potential future expansion of the County's Riley Ranch campground and assessed the potential for increased OHV use; considered the project's impact on wildlife habitats over the 2,900 acres of the southern riding area; and considered how the access trail would affect the entire 2,900 acres of the southern riding area. AR 9931-38, 9947. To the extent that plaintiff Environmental Groups argue that the EA should consider the Riley Ranch project's effects on the entire 31, 500 acres of the Oregon Dunes, I do not find this argument persuasive. As the Forest Service points out, the Oregon Dunes does not run continuously up the coast from the project; instead it is interrupted by other lands south of the Umpqua River. AR 4878. Accordingly, the entire Oregon Dunes is not part of the affected environment. 36 C.F.R. § 220.4(f) (requiring that the Forest Service assess the cumulative effects off reasonably foreseeable future actions "on the affected environment.")

Moreover, plaintiff Environmental Groups' contention that the Forest Service turned a blind eye towards the cumulative effects stemming from the project's potential for increased ORV trespass in the Oregon Dunes is not convincing. The EA specifically noted that in undertaking the Riley Ranch project, the Forest Service will designate a single trail within MA 10(C), which would reduce the adverse effects of user-created trails in that area because the user-created trails would be closed. AR 9962. Plaintiffs base their argument that the project would increase OHV riders in MA 10(C) on their view that OHVs are currently prohibited from MA 10(C). Their view, however, is belied

Page 12 - OPINION AND ORDER

by the underlying record. The Dunes Plan designates MA 10(C) as "OHV restricted to designated routes" and notes that designated routes should be identified within three years of the Dunes Plan 19944 approval. AR 4928. However, prior to the Riley Ranch project, the Forest Service had not designated a route, meaning that the Forest Service has no enforcement tool to close the user created-routes in MA 10(C). Plaintiffs' argument that in 1997, three years after the Dunes Plan was approved, all trails in MA 10(C) closed is not persuasive. First, such a change in the designation of MA 10(C)–from permitting OHVs on designated routes to closed to OHVs, would have required at least a public notice. Next, the Dunes Plan specifically notes that planned projects, such as OHV routes, may be revised based on priority or budgetary changes. AR 5028. Accordingly, I find that the record supports the Forest Service's analysis that the Riley Ranch project would reduce the cumulative effects of user created trails in MA 10(C) by designating a single trail.

I grant judgment in favor of the Forest Service on plaintiffs' claim that the Forest Service violated the NEPA by failing to properly assess the cumulative impacts of the project.

## 2.   **Mitigation Measures**

Plaintiff Environmental Groups argue that the Forest Service violated NEPA because it relied on mitigation measures which were not assured to occur and which do not completely compensate for any possible adverse environmental impacts. Plaintiffs contend that if the Agency's proposed mitigation measures are not certain to occur, then the Agency cannot sign a Finding of No Significant Impact ("FONSI") and must complete an Environmental Impact Statement ("EIS"). The Forest Service argues that plaintiffs have applied the incorrect legal standard to their arguments and are incorrect in their assertions that the proposed mitigation measures are inadequate.

The Ninth Circuit has stated that courts can consider the effect of mitigation measures in

Page 13 - OPINION AND ORDER

determining whether an EA is sufficient or whether an Agency must prepare an EIS. Friends of the Payette v. Horseshoe Bend Hydroelectric Co., 988 F.2d 989, 993 (9th Cir. 1993)(citing Friends of Endangered Species, Inc. v. Jantzen, 760 F.2d 976, 987 (9th Cir.1985). If significant measures are taken to "'mitigate the project's effects, they need not completely compensate for adverse environmental impacts.'" Id. (quoting Jantzen, 760 F.2d at 987.

The Forest Service determined that the Riley Ranch project would improve resources conditions rather than degrade resources and issued a FONSI. AR 9920, 9933, 9962, 9948, 10048. This conclusion was not arbitrary and capricious. The record shows that MA 10(C) was designated "OHV restricted to designated routes;" however, with no routes designated, OHV riders were using several user created trails in the MA 10(C) and possibly damaging resources. AR 4928, 9919-20. As I discussed above, plaintiff Environmental Groups argument that all OHV use in MA 10(C) is currently illegal is not supported by the Dunes Plan or anywhere else on the record. The Forest Service has also included physical barriers, such as cedar rail fencing and logs, effectiveness monitoring, including patrols of the area, and signs as part of the Riley Ranch project's design criteria to address any trespass from the designated trail. AR 9976-77, 9983. The project will install a gate across the road to Butterfield lake, a key resource, to prevent unauthorized entry. AR 9977. The Forest Service has entered into a formal agreement with the County to clearly define the County's obligations to "implement all required mitigation and long-term maintenance requirements." AR 9983. The Forest Service's conclusion that the project would not significantly affect the Oregon Dunes was not arbitrary and capricious. Accordingly, I grant judgment in favor of the Forest Service on plaintiffs' claim that the Forest Service violated NEPA by relying in inadequate mitigation measures.

Page 14 - OPINION AND ORDER

### 3.    **Environmental Impact Statement Requirement**

Plaintiff Environmental Groups argue that seven of the "significance" factors in the NEPA regulations indicate that an EIS was required for the Riley Ranch project and; therefore the Forest Service erred in determining an EIS was not necessary. The Forest Service contends that the administrative records supports its decision not to prepare an EIS.

The NEPA requires federal agencies to prepare an EIS when a major federal action is proposed that may significantly affect the quality of the environment. 42 U.S.C. § 4332(2)(C). Both the context and intensity of the action must be considered when an agency is considering whether a proposed action significantly affects the environment. 40 C.F.R. § 1508.27. In evaluating intensity, the NEPA regulations require that an agency consider ten significance factors. Id. Among the factors are: (1) the degree the proposed action affects public health or safety; (2) unique characteristics of the geographic area; (3) the degree to which the effects of the quality on the human environment are likely to be highly controversial; (4) the degree to which the action may establish a precedent; (5) the actions cumulatively significant impacts; (6) adverse effects to an endangered or threatened species; (7) whether the action threatens a violation of federal, state or local law or requirements imposed for the protection of the environment. Id. §§ 1508.27(b)(2), (b)(3), (b)(4), (b)(6), (b)(7), (b)(9), (b)(10). If any of these factors is present, an EIS is required. Id. § 1508.27.

The Riley Ranch project EA determined that none of the proposed actions were expected to substantially affect human health and safety. AR 10056. This conclusion is supported by the record and is not arbitrary and capricious. The project's design criteria included safety, engineering, and monitoring elements: vehicles will be flagged to reduce collision risk; signs will be used at the bridge entrance; and there will be ongoing monitoring for safety hazards.

Page 15 - OPINION AND ORDER

The Forest Service's conclusion that the geographic area impacted by the Riley Ranch project had no unique characteristics or ecologically critical areas is supported by the record. It is undisputed that the Oregon Dunes is an Inventoried Roadless Area and that the Oregon Dunes contains unique geological features, some of which are found no where else in the world. AR 167, 170, 4877, 4302, 4419. With the Riley Ranch project, however, there is no road planned in an Inventoried Roadless Area. The Forest Service has, consistent with its regulations designated the project's access route as a trail, and plaintiffs have not challenged the designation as a trail rather than a road. See e.g., AR 6216 (the final roadless rule did not intend "to prohibit the authorized construction...of motorized...trails that are classified and managed as trails.") Next, the record shows that various areas of the Dunes have been set aside for different uses and management. AR4912-4919. The designated route does not border any management areas which are dedicated as undeveloped natural areas, snowy plover habitat, wetlands habitat, research natural areas, or proposed wild and scenic rivers. AR 9930. The project is almost entirely within MA 10(B), which is open to OHV use, and MA 10(C) which allows OHV use on restricted routes. AR 9930, 4926, 4928. A small portion of the project's area–but not the proposed trail, intersects with MA 10(F). AR 9930. MA 10(F) has the goal to create, maintain, enhance, or restore a variety of special plant, fish, and wildlife habitats. AR 4934. The Riley Ranch project will close user-created trails that do border 10(F) and will employ barriers to prevent OHV use near this area. AR 9930, 9976-84. Further, in earlier analysis under the NEPA, the Forest Service determined that continued OHV use will not diminish the character of the roadless areas of the Dunes. AR 4581-82. Finally, the record shows that the Forest Service has concluded that the project would reduce the potential for degradation of native species by closing user-created trails. AR 9952.

Page 16 - OPINION AND ORDER

The record supports the Forest Service's determination that the Riley Ranch project is not likely to be highly controversial. A proposal is "highly controversial" when there is a"substantial dispute" about the size, nature, or effect of the major Federal action rather than the existence of opposition to a use." Anderson v. Evans, 371 F.3d 475, 489 (9th Cir. 2004). "Put another way, a proposal can be considered controversial if 'substantial questions are raised as to whether a project ... may cause significant degradation of some human environmental factor.'" Id. (internal citations omitted). The Forest Service concluded that there was "no significant scientific controversy over the impacts of the Project." AR 10056. I observed during oral argument that plaintiffs have not come forward with any biological or scientific opinions that this project will negatively impact the environment in the project area. At oral argument, plaintiffs' counsel asserted that plaintiffs need not produce such evidence; that the crux of this action was whether the Forest Service had followed the appropriate procedures and steps required by the NEPA. The record before me, however, does not indicate any substantial question as to the significance of the scientific effect of the Riley Ranch project on the Oregon Dunes. Thus, I must conclude that the Forest Service, using their own scientific data, properly determined that the EA adequately addressed the project's environmental impact and reasonably found that this project is not likely to be highly controversial.

The Forest Service reasonably concluded that the Riley Ranch project was not precedential. AR 10056-57. Plaintiffs' contention that the project is precedential rests on their assertion that the access route is a road rather than a trail. The Forest Service, however, properly relied on its own regulations to designate the route as a trail. As I have previously discussed, plaintiffs' argument that MA 10(C) was closed to OHV use in 1997 is not supported by the Dunes Plan or other evidence in the record. The proposed trail would not enter any areas which were closed to motorized use. AR

Page 17 - OPINION AND ORDER

9930. Instead, the record establishes that the motorized route falls within two management areas which have previously been rated as semi-primitive motorized. AR 4926, 4928, 9930.

As I previously discussed, the Forest Service reasonably concluded that the Riley Ranch project would have no cumulative environmental impacts and, instead, would reduce adverse impacts associated with user-created trails. AR 10057.

The record establishes that the Forest Service reasonably concluded that the Riley Ranch project would have no effects on listed species or their habitat. AR 10057, 10024-47, 9942-47, 9508-10. Plaintiffs' argument that this conclusion was arbitrary because the Forest Service only considered a limited geographical area is not persuasive. Instead, the record shows that the Forest Service considered the effect of the trail on wildlife in the 2,900 acre riding area and noted that designated Snowy Plover areas at the Oregon Dunes are closed to OHV use and several miles from the proposed trail. AR 9946.

Finally, the Forest Service reasonably determined that there was no violation of Federal Law. AR 10057. Plaintiff Environmental Groups assert that because the Forest Service failed to consult the United States Fish and Wildlife Service, as required by the Endangered Species Act, the Riley Ranch project violates federal law. As noted above, the Forest Service reasonably determined that the project would not affect listed species or their habitat.

Based on the record, I find that none of the NEPA's significant factors are present. The Forest Service reasonably concluded that no EIS was necessary. I grant judgment in favor of the Forest Service on plaintiffs' EIS claim.

## B.    The National Forest Management Act ("NFMA") Claims

The NFMA creates a legal framework for the management of our national forests. 16 U.S.C.

§ 1600, et seq. The NFMA directs the Forest Service to develop a land and resource management plan ("forest plan") and an EIS for each unit of the National Forest System. 36 C.F.R. § 219.10(a),(b). A forest plan establishes planning goals and objectives for individual forests and provides for management of the forest. 16 U.S.C. §§ 1604(g)(1)-(3). Forest plans may be amended, but, if the amendment would result in a significant change, "extensive procedures are required." 16 U.S.C. § 1604(f)(4). The Forest Supervisor has the discretion to determine whether a particular amendment is "significant." Native Ecosystems Council v. Dombeck, 304 F.3d 886, 900 (9th Cir. 2002).

In 1994 the Forest Service published the Dunes Plan, which amended the Siuslaw National Forest's forest plan. AR 5084. Because the Dunes Plan was a significant amendment to the existing forest plan, a detailed EIS was prepared. AR 4868-5040, 4293-4867. The Riley Ranch project amends the Dunes Plan by designating a trail in MA 10(C). Plaintiff Environmental Groups argue that the Forest Service violated the NFMA by: (1) failing to follow guidelines set forth in the National Forest Manual when amending the Dunes Plan by approving the Riley Ranch project and; (2) "changing MA 10(C) from 'closed to motorized use' to 'open to motorized use' in the Riley Ranch project;" thus significantly amending the Dunes Plan. (Plfs.' Opening Memorandum at 33(dkt. #15)).

First, I note that the Ninth Circuit has stated that the Forest Service Manual and Handbook "do not have independent force and effect of law." Western Radio Services Co., Inc. v. Espy, 79 F.3d 896, 901 (9th Cir. 1996). The Manual "'merely establishes guidelines for the exercise of the Service's prosecutorial discretion; it does not act as a binding limitation on the Service's authority.'" Id. (citing United States v. Coremus, 888 F.2d 630, 633 n.3 (9th Cir. 1989)). Accordingly, plaintiffs' argument that the Forest Service violated the NFMA by failing to follow the guidelines in the Forest

Page 19 - OPINION AND ORDER

Service Manual fails as a matter of law.

Next, I consider plaintiffs' argument that changing MA 10(C) from "closed to motorized use" to "open to motorized use" significantly amends the Dunes Plan. Plaintiffs base this argument on their contention that, because the Forest Service failed to designate an OHV route in MA 10(C) within 3 years of the Dunes Plan approval in 1994, MA 10(C) was automatically closed to motorized traffic by July 1997. As I previously discussed, this interpretation is not supported by the record.

The Dunes Plan designated MA 10(C) as "OHV Restricted to Designated Routes" and set the goal as "protect[ing] existing vegetated areas while providing controlled opportunities for ORV riding and travel on designated routes...to reach the beach and other designated riding areas." AR 4928. Plaintiffs are correct that the Dunes Plan stated that the Forest Service should identify designated routes in the MA 10(C) area within 3 years of the plan approval; however, plaintiffs ignore that the Dunes Plan also stated that planned projects, such as ORV routes may be revised if management direction or priorities change. AR 4928, 4970, 5028. There is nothing in the Dunes Plan, or anywhere else in the record, to establish that MA 10(C) would be automatically closed—without public notice or any process under the NEPA, if the Forest Service did not designate a OHV route by 1997. See e.g., Norton v. Southern Utah Wilderness Alliance, 542 U.S. 55, 70 (2004) ("Quite unlike a specific statutory command requiring an agency to promulgate regulations by a certain date, a land use plan is generally a statement of priorities." Indeed, under the Dunes Plan, MA 10(C) is open to OHV riding on designated routes. AR 4928. The reality is that the Forest Service's failure to designate a route in MA 10(C) under the Dunes Plan has left the area open to OHV-users and equestrians, but without a designated route. AR 9920. OHV-riders and equestrians have utilized user-created trails. Based on the record, I find that amending the Dunes Plan to

Page 20 - OPINION AND ORDER

designate one route in MA 10(C) does not significantly amend the Dunes Plan. The Forest

Supervisor's determination that the Riley Ranch project was not a significant forest plan amendment

is reasonable and is entitled to deference.

## **Conclusion**

Plaintiff Environmental Groups' Motion for Summary Judgment (dkt. 14) is DENIED. Forest

Services' Cross Motion for Summary Judgment (dkt. 29) is GRANTED.

IT IS SO ORDERED

DATED this ____ day of July 2010.

_____
THOMAS M. COFFIN
United States Magistrate Judge